# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MICHAEL E. DONATI,

      Petitioner,

      v.

WARDEN RICHARD MILLER and
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,

      Respondents.

Civil Action No. TDC-16-2548

## MEMORANDUM OPINION

Petitioner Michael Donati, an inmate at Roxbury Correctional Institution in Hagerstown, Maryland, has filed an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he attacks his 2012 convictions in two separate criminal cases for electronic mail harassment, obstruction of justice, and various other offenses. The Petition is fully briefed. Upon review of the submitted materials, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition is DENIED and DISMISSED.

## BACKGROUND

The Petition relates to two separate but related criminal cases filed in the Circuit Court for Montgomery County, Maryland, that were addressed in a single opinion by the state post-conviction court. Although Donati's filings in this Court specifically reference only one of the two cases by case number, Case No. 119385C, the Court will treat Donati's Petition as raising challenges to the judgments in both state cases in light of the disposition by the state post-

conviction court and in view of the timeliness considerations Donati would face if he attempted to refile a separate Petition at this point.

## I. *State v. Donati*, No. 118496C

The first of Donati's two cases, Case No. 118496C, arises from events that occurred on April 10, 2011 at Growlers Pub in Gaithersburg, Maryland. Alex Zeppos owned or managed the pub, and Jason Allen owned the company that provided security at the pub. On April 10, 2011, Donati visited Growlers Pub and offered to sell marijuana to one of Allen's employees, prompting Allen and Zeppos, with the aid of others, to remove Donati from the premises. Donati allegedly "punched, bit, and pushed" Allen during that process. *Donati v. State*, 84 A.3d 156, 162 (Md. Ct. Spec. App. 2014). Zeppos called the police, who arrested Donati. Donati was later released on bail. Donati was charged with possession with intent to distribute marijuana and second-degree assault. Zeppos was scheduled to be a witness at Donati's trial.

Donati was initially represented by attorneys Andrew Jezic and David Moyse. However, in October 2011, the trial court struck their appearance on counsels' request after Assistant State's Attorney Amy Bills told Moyse that she had received an email from an individual identifying himself as "C. Thomas" ("the Thomas Email") claiming that Donati was innocent and naming Jezic and Moyse as points of contact for Thomas. Jezic and Moyse were replaced by Alexander Foster, who entered his appearance in November 2011.

On February 29, 2012, Donati was convicted after a jury trial of the drug charge but acquitted of the assault charge. On September 7, 2012, Donati was sentenced to five years of imprisonment. He filed an appeal asserting that the trial court had improperly limited cross examination and had admitted hearsay evidence. The Maryland Court of Special Appeals affirmed the conviction.

## II.    *State v. Donati*, No. 119385C

Donati's other criminal case, Case No. 119385C, related to conduct that occurred after, and seemingly in response to, Donati's arrest at Growlers Pub.  The factual background of this case, which Donati does not dispute, is set forth in *Donati v. State*, 84 A.3d 156, 161-69 (Md. Ct. Spec. App. 2014).  The Court describes those specific facts relevant to the Petition.

On April 23, 2011 at 2:25 a.m., approximately two weeks after Allen and others removed Donati from Growlers Pub, police received a 911 call from an anonymous caller who reported that Allen was dealing drugs out of his residence.  When Officers Nicholas Jerman and Gregory Hollis responded to Allen's house, they observed Donati waiting in an older model minivan near Allen's house.  When they pulled up behind the van, Donati started to drive away.  Because of the suspicious behavior, the officers pulled over the minivan and spoke briefly with Donati before letting him go.  Meanwhile, two other police officers approached Allen's house and saw a plastic bag with suspected marijuana and marijuana plants growing in the garden.  When the front door opened, the officers smelled marijuana and encountered Allen's roommate, who admitted that he had "just smoked a joint." *Id.* at 164.  The officers searched the house with Allen's permission but found no evidence of marijuana growing or distribution.  Later, Officer Hollis listened to the 911 call and reviewed security footage from a security camera near the pay phone from which the call had originated.  Based on his brief conversation with Donati, Hollis recognized the caller's voice on the 911 message and the van in the security footage as those of Donati.

From April 2011 to October 2011, Zeppos received numerous emails from multiple email addresses, including pleasuredaddy123456@gmail.com, mr.tipper@yahoo.com, taxman86@hotmail.com, backdoor.geeky.greeky.finder@hotmail.com, ms.watcher@ymail.com, thebomb00769@yahoo.de, and mr.yo_daddy@yahoo.com.  These emails stated that Allen's

3

security staff was engaged in drug dealing; that if Allen's staff continued to work at Growlers, the "establishment will not be around much longer. Up in smoke, if you know what I mean"; that the IRS was investigating Growlers; and that Zeppos was about to be indicted. *Id.* at 175.

During the same time frame, various law enforcement officers, including Maryland-National Capital Park Police Chief Daren Manley and Montgomery County Police Detective Richard Grapes, received numerous pseudonymous emails from addresses such as mrtpstr83@gmail.com, mr.tipper006@gmail.com, bourbonstband@gmail.com, and mr.essex@ymail.com, claiming that Zeppos, Allen, and Growlers Pub were engaged in illegal activity such as growing and selling marijuana, serving untaxed alcohol, and laundering drug proceeds through the restaurant. One of the emails was purportedly from "Clayton Thomas, III" using the email address "cthomas03@hotmail.com" and claimed that "Growlers was 'deeply involved in the drug trade.'" *Id.* at 165. Some of the other emails were sent from the same email addresses used to send emails to Zeppos.

Law enforcement officers began to suspect that Donati was involved in sending the emails and in the illegal drug production activity alleged in the emails. After further investigation, Donati was arrested on October 4, 2011. Zeppos did not receive any threatening emails after Donati's arrest. During a post-arrest search of Donati's residence pursuant to a search warrant, police officers found three sheets of paper with numerous e-mail addresses listed on them. A sheet labeled "Special emails" included the following addresses: taxman86@hotmail.com, cthomas03@hotmail.com, mr.essex@ymail.com, ms.watcher@ymail.com, jrkelly123@hotmail.com, mr.yo_daddy@yahoo.com, thebomb 00769@yahoo.com, and backdoor.geeky.greekyfinder@hotmail.com. *Id.* at 167. A sheet labeled "Normal emails" included the email address bourbonstband@gmail.com. A forensic examination of a computer

4

seized from Donati's residence revealed that the computer was registered as "Bourbon St Band" and contained one user account named "Montana," a nickname for Donati. *Id.* at 168. The hard drive contained emails between "mr.essex @ymail.com" and Detective Grapes, and a fragment of an email from "Mr. Tipper" addressed to Chief Manley, as well as evidence of a Hotmail account for "Mr. Tipper." *Id.*

Donati was charged with various offenses relating to the communications received by law enforcement officers and Zeppos, including, as relevant here, multiple counts of electronic mail harassment of Zeppos, in violation of the then-applicable version of section 3-805 of the Criminal Law Article of the Maryland Code. Md. Code Ann., Crim. Law § 3-805 (LexisNexis 2012). As in Case No. 118496C, Donati was originally represented by Jezic and Moyse, but they were replaced by Foster following the exchange relating to the Thomas Email. Donati proceeded to a jury trial on the same day that the verdict was entered in Case No. 118496C. During deliberations, the jury sent a note to the judge asking for a legal definition of harassment in the context of section 3-805. The court and counsel for both parties agreed that there was no legal definition, so the court directed the members of the jury to review the jury instructions and use their common sense.

On March 7, 2012, Donati was convicted of one count of distribution of marijuana, two counts of obstruction of justice, two counts of making a false statement to police, two counts of intimidating a witness, and 15 counts of electronic mail harassment of Zeppos. He was acquitted of several counts, including multiple counts of electronic mail harassment. Donati was sentenced to consecutive sentences on the various counts totaling 32 years of imprisonment, to run consecutive to his sentence in Case No. 118496C.

After trial, Donati requested a new trial because, among other grounds, he had learned on March 9, 2012, two days after the verdict, that the State had not disclosed the Thomas Email,

which he characterized as an exculpatory e-mail message, and that it no longer possessed that email. *Donati*, 84 A.3d at 189-90. The trial court denied the motion.

On direct appeal, Donati argued, among other claims, that there was insufficient evidence to support his convictions for email harassment because the evidence did not establish that he sent the emails and that the trial court erred in denying his motion for a new trial. The Court of Special Appeals rejected Donati's sufficiency of the evidence argument, noting that "ten of the e-mails at issue were sent from addresses that were written down on the piece of paper seized from appellant's basement," that a search of Donati's computer hard drive contained data about another of the email addresses used to write to Zeppos, and that the content of the emails "provided sufficient circumstantial evidence for the jury to determine that appellant was the author." *Id.* at 177. The Court of Special Appeals declined to consider the argument that the motion for a new trial should have been granted based on the Thomas Email, because Donati had "not presented sufficient legal or factual argument for this Court to address this claim." *Id.* at 190. The Court of Special Appeals also rejected Donati's other arguments. Donati filed a petition with the Maryland Court of Appeals for a writ of certiorari, but his request was denied on May 16, 2014. *Donati v. State*, 91 A.3d 614 (Md. 2014) (table order).

## III.    Postconviction Proceedings

On February 3, 2014, Donati filed a petition for post-conviction relief in Case No. 118496C with the Circuit Court for Montgomery County. On March 4, 2014, Donati filed a petition for post-conviction relief in his other case, Case No. 119385C. Because Donati raised the same claims in both petitions, the state post-conviction court considered both petitions together. Donati presented the following claims:

6

1. The State committed prosecutorial misconduct when Assistant State's Attorney Amy Bills deleted an email from someone named Clarence Thomas that stated that Petitioner was innocent.

2. The State committed prosecutorial misconduct when Assistant State's Attorney Amy Bills failed to turn over a report of Officer Ceresini that the roommate of Petitioner's accuser smelled of marijuana when Ceresini went to their home.

3. Petitioner was denied effective assistance of counsel because trial counsel failed to argue that the evidence was insufficient to convict Petitioner of harassment.

4. Petitioner was denied effective assistance of counsel because trial counsel failed to request a complete jury instruction on harassment and misuse of electronic mail.

Post-Conviction Op. at 1-2, ECF No. 24-7.

The post-conviction court conducted a hearing on the petitions at which Bills, Moyse, and Foster testified. Bills testified that during the summer of 2011, at some point after Donati had been charged in Case No. 118496C, but before he had been charged in Case No. 119385C, she received an email from "a C. Thomas" which stated that "Michael Donati is innocent." Post-Conviction Tr. at 41, ECF No. 36-1. Later during Bills's testimony, the State introduced a copy of the paper listing various email addresses that was recovered from Donati's house, which included cthomas03@hotmail.com.

Bills, who was aware of the investigation into Donati for email harassment, testified that she believed that Donati had sent the email, "got concerned that that email might have a virus on it," and deleted the email without printing it or contacting anyone for technical assistance. *Id.* at 41-42. Bills stated that she informed Moyse of the email within a few days of receiving it, telling him, "I know it's your client, and I want you to tell him to knock it off and not send anymore emails to me." *Id.* at 47. She also informed Moyse that she had deleted the email and testified

that Moyse did not ask her to recover the email at that time. Bills further testified that once Foster became Donati's counsel, she discussed the Thomas Email with him. She also noted that she eventually attempted to recover the email, but that the information technology staff were unable to do so.

Moyse testified that Bills told him of the Thomas Email during a happy hour at some point before the second criminal case was filed. Foster testified that Moyse alerted him to the Thomas Email after Foster began his representation of Donati and before the trials. Foster further stated that he discussed the Thomas Email with Bills before trial, that Bills described the gist of the email as claiming that Donati was innocent of the drug and assault charges, and that she had deleted the email. On cross examination, Foster testified that he had not made an issue of the Thomas Email at either trial at the request of Donati, who was aware of the email. When asked on redirect examination what Donati's reason was for not wanting to pursue the issue of the Thomas Email at either trial, Foster testified that he had advised Donati that a continuance would likely ensue if he raised the issue of the Thomas Email with the trial judge, and that Donati was insistent that he "did not want the trial delayed, continued, or postponed" because he was in pretrial detention. *Id.* at 37-38.

During argument on the state post-conviction petition, Donati's post-conviction counsel argued that the ineffective assistance of counsel argument relating to sufficiency of the evidence was premised on trial counsel's failure to argue that the evidence was insufficient to convict Donati of harassment because Zeppos never told Donati to stop sending emails, Zeppos was not alarmed or fearful as a result of the emails, and he instead believed some were "silly." *Id.* at 61. As for the ineffective assistance claim based on the failure to argue for jury instruction on the definition of harassment, Donati's post-conviction counsel contended that trial counsel was ineffective for

failing to argue that, following receipt of the jury note, the jury should have been provided a definition of harassment derived from the general harassment statute, which requires that a defendant have the intent to "harass, alarm, or seriously annoy" the victim, and that the victim must have requested that the defendant stop the harassing behavior. Md. Code Ann., Crim. Law § 3-803. The post-conviction court rejected all of Donati's arguments and denied the state petition for post-conviction relief.

Donati filed a self-represented application for leave to appeal, in which he asserted the same four grounds for post-conviction relief presented to the circuit court. Donati's post-conviction counsel also filed a timely application for leave to appeal the post-conviction court's rulings on the two grounds of ineffective assistance of counsel. The Court of Special Appeals denied Donati's application for leave to appeal, and its mandate issued on June 23, 2016.

On July 5, 2016, Donati filed his federal Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He subsequently filed an Amended Petition, raising arguments substantially similar to those that he presented in his state post-conviction petition. Specifically, he asserts the following grounds for relief:

1. Prosecutorial misconduct due to the prosecutor's destruction of an exculpatory email and failure to include the email in discovery.

2. Prosecutorial misconduct based on the prosecutor's failure to include in discovery a note from Officer Ceresini noting that Allen's roommate smelled of marijuana.

3. Ineffective assistance of counsel based on the failure to challenge the sufficiency of the evidence regarding the charges of electronic mail harassment.

4. Ineffective assistance of counsel based on the failure, in response to the jury note, to argue for a jury instruction regarding the definition of harassment.

In his Reply, Donati argues for the first time that his trial counsel was ineffective for failing to argue that the evidence was insufficient to sustain a conviction for electronic mail harassment

9

because the relevant statute requires proof that the harassing messages constituted "lewd, lascivious, or obscene material," Reply at 15-16, ECF No. 26, and that trial counsel's failure to assert *Brady* violations constituted ineffective assistance of counsel.

## DISCUSSION

### I. Legal Standard

A petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2012). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The state court's application of federal law must be "objectively unreasonable." *Id.* Furthermore, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II.    Prosecutorial Misconduct

In his first two grounds for relief, Donati argues that the Petition should be granted because the prosecutor committed misconduct by destroying or failing to turn over exculpatory evidence. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985). There are three components of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). The prejudice element is critical because, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Moreover, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) (finding no *Brady* violation where the evidence at issue "was put before the jury during cross-examination of the very first trial witness"). Donati asserts two alleged *Brady* violations.

### A.    Thomas Email

First, Donati argues that his due process rights were violated when the prosecutor deleted the Thomas Email. At the outset, the Court notes that although Donati's post-conviction counsel

argued that this claim applied to both criminal cases, No. 118496C and Case No. 119385C, and Donati makes no particular distinction between the two cases as to this argument, the Thomas Email's proclamation of Donati's innocence could not have been exculpatory as to the second case because, as the post-conviction court concluded and Donati does not dispute, the email was sent *before* charges were filed in the second case.

In any event, even assuming that the Thomas Email could be deemed relevant to both cases, Donati is not entitled to relief. Relying on the testimony of the prosecutor and Donati's defense attorneys, the post-conviction court determined as a factual matter that both Donati and his attorney were aware of the deleted email before trial. As a factual determination, the state court's finding is presumed to be correct, and Donati has not rebutted the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Rather, the post-conviction court's factual finding is supported by the hearing transcript. Because the prosecutor had disclosed the contents of the email before trial, such that Donati could have raised the issue before or during trial and perhaps obtained a favorable evidentiary ruling or jury instruction as to the significance of the deleted email, there was no *Brady* violation. *See Smith Grading & Paving, Inc.*, 760 F.2d at 532. To the extent that the destruction of the email itself, such that the actual document was not available for use at trial, could be construed to be misconduct, the post-conviction court properly concluded that any such violation was not material. Where the Thomas Email was sent from one of the email addresses used in the sending of harassing emails to Zeppos or law enforcement and listed on the paper found in Thomas's residence, the email would have been readily established to have been sent by Donati and thus would have had little or no probative value to establish Donati's innocence. The Petition will be denied as to the first ground for relief.

### B.     Officer Notes

Donati also argues that the prosecutor committed misconduct by failing to turn over a note from Officer John Ceresini relating to his visit to Allen's house on April 23, 2011. According to Donati, Officer Ceresini's notes referenced the odor of marijuana and the admission by Allen's roommate that he had just smoked marijuana. Presumably, such evidence would be favorable to the defense in that it would support the argument that the claims in the various emails that Allen was engaged in drug dealing were true and not made with the intent to harass.

As the post-conviction court correctly noted, the substance of this note—the odor of marijuana at Allen's house and the admission of use by Allen's roommate—was presented to the jury. Officer Rick Goodale testified at trial that "[a]s soon as the front door opened, a very strong odor of marijuana actually came out from inside the residence." Trial Tr. at 20, Ans. Ex. 2, ECF No. 24-2. Officer Goodale acknowledged that Allen's roommate admitted to the responding officers that he just smoked a joint of marijuana prior to their arrival.

Thus, even assuming that the prosecutor failed to turn over Officer Ceresini's notes, such lack of disclosure was not material to the jury's decision because the jury received the same evidence through another source. The Petition will be denied as to the second ground for relief.

### III.     Ineffective Assistance of Counsel

In the third and fourth claims set forth in the Petition, Donati contends that his trial counsel was ineffective for failing to argue that there was insufficient evidence to convict him on the electronic mail harassment charges and for failing to argue for an instruction defining the term harassment in response to a note from the jury.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-part standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668

(1984). First, the defendant must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the defendant must show that "the deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.*

On the issue of deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Judicial scrutiny of counsel's performance must be highly deferential" and not based on hindsight. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Under the Sixth Amendment, a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).

On the issue of prejudice, "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374. Thus, in order to prevail, the petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 375. A determination whether the attorney's performance was deficient need not be made if it is clear that there was no prejudice. *Strickland*, 466 U.S. at 697.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## A. Sufficiency of the Evidence

In his third claim for relief, Donati argues that his trial counsel was ineffective for failing to argue that the evidence was insufficient to prove that he had violated the electronic mail harassment statute. At his post-conviction proceeding, Donati claimed that counsel was ineffective for failing to argue that the evidence was insufficient to prove that the recipient of his emails, Zeppos, was harassed by the emails. Donati claims that counsel failed to argue that Zeppos was not harassed, alarmed, afraid, or fearful as a result of the emails, and that counsel did not argue that Zeppos failed to tell Donati to stop sending harassing emails. These alleged elements of the offense derive from the version of the electronic mail harassment statute that took effect on October 1, 2012. That amended statute provides that:

> A person may not maliciously engage in a course of conduct, through the use of electronic communication, that alarms or seriously annoys another:
> (i)   With the intent to harass, alarm or annoy the other;
> (ii)  After receiving a reasonable warning or request to stop by or on behalf of the other; and
> (iii) Without a legal purpose.

Md. Code Ann., Crim Law § 3-805(b)(1) (LexisNexis Supp. 2018). This amended statute tracked language from a separate, general harassment statute, section 3-803 of the Criminal Law Article, which provides that:

> A person may not follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:
>
> (1)   with the intent to harass, alarm or annoy the other;
> (2)   after receiving a reasonable warning or request to stop by or on behalf of the other; and
> (3)   without a legal purpose.

15

Md. Code Ann., Crim. Law § 3-803(a) (LexisNexis 2012).

Here, however, the harassing emails were sent between April and October 2011, before the amendment to the statute. Prior to October 1, 2012, the statute provided only that:

A person may not use electronic mail with the intent to harass:

    (1)    One or more persons; or
    (2)    By sending lewd, lascivious, or obscene material.

Md. Code Ann., Crim. Law § 3-805(b) (LexisNexis 2012). The post-conviction court found that under the statute in effect at the time that Donati sent the emails, there was no requirement that the victim be alarmed or seriously annoyed by the email, or that the victim had requested that the sender stop sending the emails. Trial counsel could not fairly be deemed ineffective for failing to argue for an extension of the general harassment statute to the electronic mail harassment statute, or, at Donati's trial in March 2012, to forecast a change in the law, which occurred when the revised statute was passed and signed in April 2012, and argue that it somehow applied retroactively. *See United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) (finding that counsel does not fall below *Strickland*'s standard of reasonableness "by failing to anticipate changes in the law, or to argue for an extension of precedent"). The post-conviction court therefore appropriately concluded that trial counsel was not ineffective for failing to argue that elements not in effect at the time of the offense had not been established.

At a minimum, the post-conviction court's determination is not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). Particularly where the post-conviction court's determination was grounded in an interpretation of state law, this Court has no grounds to deem it unreasonable. *Cf. Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that federal habeas relief is not available for errors of state law, and that "it is not

the province of a federal habeas court to reexamine state-court determinations on state-law questions").

## B.    Jury Instructions and Jury Note

For similar reasons, Donati's related claim that his trial counsel was ineffective for failing to request a more detailed jury instruction on electronic mail harassment also fails. The trial court provided the following instruction to the jury on electronic mail harassment:

> The defendant is charged with the crime of electronic mail harassment. In order to convict the defendant, the State must prove that the defendant used electronic mail with the intent to harass one or more persons. Electronic mail is defined as the transmission of information or communication by the use of a computer or other electronic means that is sent to a person identified by a unique address that is received by the person.

Trial Tr. at 174-75, ECF No. 24-3. During jury deliberations, the jury sent a note asking if there was a legal definition of harassment. Both counsel and the judge agreed that there was no further legal definition of the term, so the court, with the assent of all counsel, responded by referring the jury back to the existing jury instructions and directing the members of the jury to use their common sense.

The post-conviction court determined that trial counsel was not ineffective for failing to request an instruction, as suggested by post-conviction counsel, that would have described harassment as contact that "alarms or seriously annoys" another person and that would have required as an element that the victim had requested that the conduct stop. Post-Conviction Tr. at 64. As discussed above, these terms derive either from a separate general harassment statute or a later version of the electronic harassment statute, not from the actual statute containing the charged offense. The post-conviction court reasonably found that where the jury instruction was consistent with the statute of conviction, Donati had not established that trial counsel's decision to agree not

to further define harassment, a position shared by the trial judge and the prosecutor, was a choice outside the "wide range of reasonable professional assistance" permitted under *Strickland*. 466 U.S. at 689. Again, the post-conviction court's determination, which was grounded in its application of state law, at minimum, was not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

## IV. New Claims

In his Reply to the Answer, Donati for the first time argues that as to the jury instruction on the definition of harassment, his trial counsel was ineffective because he did not request that the Court inform the jury that the harassment required the transmission of "lewd, lascivious, or obscene material." Reply at 14-17, ECF No. 26. He also argues that his trial counsel's failure to take action on the incidents of prosecutorial misconduct discussed above constituted ineffective assistance of counsel. Donati did not raise these arguments on direct appeal, in his state post-conviction petition, or in the Petition itself. Where these claims were not asserted in the Petition, the Court need not consider them. *See* Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts (requiring that the petition must "specify all the grounds for relief available to the petitioner"); *cf. Yousefi v. INS*, 260 F. 3d 318, 326 (4th Cir. 2001) (finding that an argument raised for first time in a reply brief was waived).

Moreover, where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings).

As relevant here, a procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). In order to demonstrate prejudice, a petitioner must show that the asserted error worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494. Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

### A.    Lewd, Lascivious, or Obscene Material

Although several of the emails that were the subject of the electronic mail harassment charges contained profanity and graphic references that arguably could be deemed "lewd, lascivious, or obscene," not all of them contained such language. *See Donati*, 84 A.3d at 176. When provided with an opportunity to explain why there has been no procedural default or why

such default should be excused, Donati argued that the issue was raised on his state post-conviction petition, that state remedies may still be available on this claim, and that to the extent that the claim is procedurally defaulted, it is due to ineffective assistance of counsel. As for whether the issue was raised in the state post-conviction proceedings, Donati is mistaken. There is no evidence in the post-conviction hearing transcript, briefs, or opinion that this issue was presented to the post-conviction court. Moreover, even if it had been, Donati failed to raise the issue regarding the purported element of "lewd, lascivious, or obscene material" in his application for leave to appeal the denial of post-conviction relief. Where the state court has already ruled on Donati's petition for post-conviction relief, there remain no further remedies available in the state courts, which would now find his claim procedurally barred. Md. Code Ann., Crim. Proc. § 7-103 (LexisNexis 2018) (allowing one petition for state post-conviction relief for each trial or sentence).

As for whether ineffective assistance of counsel constitutes cause for the procedural default, and whether the alleged error resulted in prejudice sufficient to excuse the procedural default, the Court finds that the argument is sufficiently flawed that the failure to raise it was not ineffective assistance of counsel, nor did it prejudice Donati. Donati argues that his counsel was ineffective for failing to argue that the jury should be instructed that an email communication constitutes harassment only if it contains "lewd, lascivious, or obscene material," based on language in the then-applicable version of the electronic mail harassment statute. *See* Md. Code Ann., Crim. Law § 3-805 (LexisNexis 2012). That statute provided that:

A person may not use electronic mail with the intent to harass:

    (1)    One or more persons; or
    (2)    By sending lewd, lascivious, or obscene material.

*Id.* Because the statute uses the disjunctive "or," the plain language of the statute reveals that it is violated either if a person used email with the intent to harass "one or more persons," or with the intent to harass "by sending lewd, lascivious, or obscene material." *See id.* Where the State needed only to establish that Donati had sent emails with the intent to harass one or more persons, namely, Zeppos, there was no requirement that the jury find, or even be instructed on, the alternative means of establishing a violation of the statute. Accordingly, the Court finds that the failure of post-conviction counsel to assert this argument was not ineffective assistance that could qualify as cause for procedural default and did not prejudice Donati so as to excuse the procedural default. Under the same reasoning, where "lewd, lascivious, or obscene material" was not an element that needed to be proven, there was no "fundamental miscarriage of justice," or valid claim of actual innocence, that would provide a basis to excuse the procedural default. *See Schlup,* 513 U.S. at 314.

**B.      Ineffective Assistance on *Brady* Claims**

Although this claim is different from Donati's direct claims of *Brady* violations, it fails for similar reasons. Where it was not presented to the state post-conviction court, and those proceedings are now complete, it was procedurally defaulted. No cause and prejudice has been shown. Regardless of the soundness of trial counsel's decision not to raise the issue of the Thomas Email in order to avoid a continuance opposed by Donati, there was no prejudice because, as discussed above, the Thomas Email was plainly linked to Donati, such that its consideration during the trial would not have advanced Donati's case. *See supra* part II.A. Likewise, there is no prejudice arising from procedural default of any ineffective assistance claim based on the failure to pursue Officer Ceresini's notes, because the substance of the notes was presented to the jury for

its consideration. *See supra* part II.B. Thus, on both issues, there is no fundamental miscarriage of justice that would excuse the procedural default of these claims.

## V.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Donati must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Donati's claims are dismissed on both procedural grounds and the merits. Upon review of the record, the Court finds that Donati has not made the requisite showing under the applicable standards. The Court therefore declines to issue a certificate of appealability. Donati may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b); *Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED and DISMISSED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: September 27, 2019

THEODORE D. CHUANG
United States District Judge